36124, 36125. STARR *v.* EMORY UNIVERSITY (two cases).

DECIDED MAY 15, 1956.

*H. H. Hutchins, J. Hugh Rogers,* for plaintiffs in error.
*James A. Branch, Thomas B. Branch, Jr.,* contra.

TOWNSEND, J. The allegations of negligence are that (a) the defendant failed to provide safe and suitable premises for the plaintiff, a paying patient in the hospital, to walk upon or to give notice or warning of the unsafe condition; (b) the defendant, with knowledge of the defective condition of the premises, failed to warn the plaintiff as to the same; (c) the defendant failed to provide adequate illumination so as to disclose the unsafe condition of the floor; (d) failed to keep the tile floor covering in a safe and unslippery condition; (e) so placed the Christmas tree

as to cast shadows on the aisle; (f) so placed the beds as to cast shadows on the aisle from the curtains surrounding them; (g) so placed the table in the aisle as to cast shadows across this spot; and (h) failed to turn on the ceiling lights or otherwise illuminate the aisle.

While the duty of the owner of premises is one of exercising ordinary care for its invitees, the degree of care which constitutes ordinary care under the circumstances may vary according to the age or capacity of the invitee known to the former. "A private hospital in which patients are placed for treatment by their physicians, and which undertakes to care for the patients and supervise and look after them, is under the duty to exercise such reasonable care in looking after and protecting a patient as the patient's condition, which is known to the hospital through its agents and servants charged with the duty of looking after and supervising the patient, may require." *Emory University* v. *Shadburn*, 47 *Ga. App.* 643 (1) (171 S. E. 192), affirmed, 180 *Ga.* 595 (180 S. E. 137). *Stansfield* v. *Gardner*, 56 *Ga. App.* 634 (193 S. E. 375). It is axiomatic that even a person not laboring under a disability would expect the floors of hospitals to be kept clear of slippery substances in the areas where patients are accustomed to walking because of the fact that so many of the persons using such areas are in fact under a disability. It was accordingly negligent for the defendant to allow a portion of the floor in the area between beds in a hospital ward to be polished with wax and buffed so as to become highly slick and dangerous over an area where this condition could not be ascertained "without stooping down close to the floor and making a minute and close inspection." It was also negligent for the defendant's employees, acting within the course of their employment, to spill a liquid on a portion of this area, "which, combined with said slick and dangerous condition of said floor, made the floor more hazardous." Under these circumstances, failure to have proper illumination might also be found by the jury to constitute negligence entering into the proximate cause of the injuries.

The only remaining question is whether the plaintiff, a patient in the hospital but well enough to be in the course of being discharged therefrom, was so lacking in the exercise of ordinary care for her own safety as to preclude her recovery. The plaintiff

alleges that the slick condition of the floor was not apparent; the spilling of the liquid was not apparent, and this was due in part to the fact that the day was cloudy, a Christmas tree on one side of the aisle and a table and chairs on the other cast deep shadows over the slippery area; the floor was of a mottled color, and the defendant failed to have its ceiling lights burning. This court has frequently held similar allegations as to the slickness of a floor resulting from the use of wax, either alone or combined with other conditions such as poor lighting, to be sufficient to state a cause of action. *Bryant v. S. H. Kress & Co.*, 76 *Ga. App.* 530 (1, 2) (46 S. E. 2d 600); *Haverty Furniture Co.* v. *Jewell*, 38 *Ga. App.* 395 (1, 2) (144 S. E. 46); *Caroway* v. *City of Atlanta*, 85 *Ga. App.* 792, 798 (2) (70 S. E. 2d 126), and cases therein cited. While every negligence action must in the last analysis be decided on its own particular facts, these cases contain facts more closely related to the situation here alleged than do those relied upon by the plaintiff in error, such as *Mattox* v. *Atlanta Enterprises, Inc.*, 91 *Ga. App.* 847 (87 S. E. 2d 432), where a woman descended a dark flight of stairs in a theater and tripped over some torn carpeting on which a greasy substance had been allowed to accumulate. That decision held that the plaintiff was not in the exercise of ordinary care for her own safety because the petition alleged that the stairway was dark and the plaintiff could not safely descend it, but that she nevertheless continued to descend while knowing it to be unsafe. No such allegations appear in the petition here under consideration. There was nothing whatsoever, so far as appears, to warn the plaintiff that any possible defect might exist on the floor between the aisles of the hospital beds in her ward where she was a patient, or that it would be unsafe for her to traverse the area. Accordingly, the petition does not affirmatively reveal that she failed to exercise ordinary care for her own safety, either in not detecting the slippery substance on the floor before stepping there or in proceeding along the floor after becoming aware that it was in any manner unsafe.

Neither is this petition controlled on its facts by *Holman* v. *American Automobile Ins. Co.*, 201 *Ga.* 454, 462 (39 S. E. 2d 850), cited by the defendant in error. In that case an employee descended a flight of steps leading to the employees' cafeteria

and slipped as she stepped from the last step onto the waxed floor of the restaurant area. That decision is based on the fact that "there is no allegation that she was not familiar with the floor of the cafeteria and how it was ordinarily kept, and no contention as to insufficient lights. 'An excessive and unnecessary amount of wax on the floor which should have been wiped up and removed' must have been patent and obvious; and there is no allegation that it was not." In the present case, there are full and complete allegations as to insufficient lights; there is no allegation as to excess wax, and there are statements affirmatively showing that the slick place was not patent and obvious, and that because of the shadows the highly polished floor did not appear to be such. The *Holman* case is based on a line of cases dealing with patent defects; this case does not fall within that group.

The assignments of error on the rulings on special demurrer are not argued, but from what has hereinabove been said it is obvious that the paragraphs objected to as conclusions are sufficient, when considered with the remaining allegations of fact in the petition, to withstand this criticism. *Saliba* v. *Saliba*, 202 *Ga.* 279 (9) (42 S. E. 2d 748). Also since, as above pointed out, the duty of a hospital toward its patients in view of its knowledge of their physical condition is relevant and material in considering the care owing by the defendant under the circumstances, paragraph 24 of the petition, setting out such duty in general terms, was not subject to criticism on the ground that it was a conclusion or that it did not state correctly a legal duty on the part of the defendant.

The trial court erred in sustaining the general and special demurrers to the petition.

*Judgment reversed. Felton, C. J., Carlisle, Quillian and Nichols, JJ., concur. Gardner, P. J., dissents.*

GARDNER, P. J., dissenting. The writer is firm in the opinion that this case should be affirmed, due to the many decisions of this court and the Supreme Court on the question before us. The majority of the whole court think otherwise. Because of my sincere belief in my stand, I am setting out the entire case more in detail than is usual in a dissenting opinion. I have set forth the pleadings as well as the evidence.

This case is before this court on a bill of exceptions filed as a

result of the trial court sustaining a general demurrer to the petition of the plaintiff. Mrs. Mamie Starr (hereinafter called the plaintiff) filed her suit against Emory University (hereinafter called the defendant) in the Superior Court of DeKalb County for personal injuries sustained while a patient at the defendant's hospital.

The plaintiff alleged that she went to the hospital of the defendant on or about December 21, 1953, for the purpose of being examined and placed under observation for a kidney ailment, having had in attendance upon her Doctors Guy, Floyd, and Pittman, and that she was assigned a bed in what was known as ward No. 6, west, or as room No. 651, which was about 40 feet in length and approximately 20 to 25 feet in width, having 8 hospital beds located on each side of said ward or room; that there was an aisle or walking space along the foot of said beds, approximately 8 to 10 feet in width; that the door or entrance to said ward No. 6, west, was located at the north end of said room and that for the purpose of privacy in said ward No. 6, west, said defendant had installed individual curtains, suspended from wires fastened to small pipes about 8 feet in height, which were in turn anchored to the floor of said ward, whereby each patient in each bed could pull the curtains around said beds thus enclosing such patient; that the plaintiff went to said hospital on December 21, 1953, as a paying patient, and was therefore an invitee of said defendant; that said defendant had one to three days previous to said December 23, 1953, placed a small library table in said aisle at the foot of beds 11 and 12, which table was approximately 10 feet northerly from the bed of the plaintiff, and that on the south side of said table were two chairs, and on the north side of said table there were two other chairs.

Said petition further alleged that, some two or three days previous to said December 23, 1953, the defendant had placed a Christmas tree in said aisle, and that the branches and trunk of said tree cast shadows across the floor of said aisle, particularly on the floor of said aisle between beds 11 and 12 and that the said library table located between beds 11 and 12 in said aisle also cast shadows on the floor of said aisle for 3 to 5 feet; that the entire floor of said ward No. 6, west, was paved or floored with a type of asphalt tile, of alternating tan and blackish tan

squares, which gave a drab or very dull appearance; that the plaintiff had been advised by her personal physician, Dr. Guy, early on the morning of December 23, 1953, that she could go back to her home in Lithonia; that she began dressing for such trip around 10:30 o'clock a. m., after having first pulled the curtain around her said bed No. 14, to afford privacy; that, after the plaintiff had completed dressing, she walked over to said library table in said aisle between beds 11 and 12 to chat with a lady who was sitting in a chair on the south side of said table, and after she had talked with said lady for about 5 to 10 minutes, she turned to leave, at approximately 10:45 o'clock a. m., and started around said table in a northerly direction; that, about the time she arrived at a point 4 or 5 feet northeasterly from said table, and at the foot of bed No. 12, her left foot slipped, causing the plaintiff to fall violently and heavily to the floor of said ward No. 6, west, with such force as to fracture the neck of her left femur; that she has suffered and will continue to suffer for the remainder of her life from said injury; that the defendant, around 10 o'clock a. m., through one of its porters, mopped and buffed the floor of said ward, causing the floor to become highly slick and dangerous in the area between beds 11 and 12, but because of the shadows cast across said aisle by said table, chairs, and Christmas tree, as well as the drawn bed curtains, and the fact there was no ceiling light or other lights burning in said ward, and the fact that it was somewhat cloudy on said date at said hour, the plaintiff could not ascertain, without stooping down close to the floor and making a minute and close inspection, that said floor had been highly polished and that the same was very slippery and dangerous; that on said date and at said time she was wearing open-toe Oxford slippers, with medium heels, the soles of which were roughed up from street wear; that the said plaintiff entered said hospital as a paying patient, and therefore it was the duty of the defendant to exercise ordinary care to provide and maintain safe floors free of a slippery condition.

The petition was amended whereby it was alleged that, in addition to the original allegations as to the condition of the floor, employees of said defendant, whose names are not known to the plaintiff but whose names are well known to the defendant, spilled some liquid on said floor about 10 o'clock a. m., near the

northeasterly side of said described table; that the spilling of the liquid was unknown to the plaintiff until after she had fallen, and that this, combined with said slick and dangerous condition of said floor, made the floor more hazardous; that it was impossible for the plaintiff to have discovered the presence of said liquid on said area because of the shadows cast across said floor, the drawn bed curtains, and the further fact that none of the ceiling lights in said ward were burning at said time.

Said petition charged the defendant with negligence in that it disregarded its duty to provide and maintain safe and suitable premises, and that the defendant failed to provide and maintain adequate illumination in and around the described unsafe floor; in allowing said Christmas tree to be so placed in said aisle as to cast shadows across the floor where the plaintiff and others similarly situated had to walk; in allowing the curtains on said beds to cast shadows across said floors where the plaintiff had to walk; in placing said table on said floor so as to cast shadows across said floor where the plaintiff had to walk; in failing to turn on the four ceiling lights to illuminate said floor so that the plaintiff and others similarly situated could have ascertained that said floor had been highly polished and that the same was highly slippery and slick.

The defendant demurred generally to the petition as amended. The trial court sustained the demurrer and dismissed the petition. The plaintiff excepted to the judgment of the court on said general demurrer.

The principal point on which the court sustained the general demurrer is that the petition showed that the plaintiff failed to exercise ordinary care for her own safety and was therefore not entitled to recover. In order to decide whether the plaintiff did or did not exercise ordinary care for her own safety, I will discuss the allegations of the petition and the failure to allege certain things.

The averments of the petition show that the plaintiff went into the hospital on December 21, 1953, for the purpose of being examined and to be placed under observation; that she spent all of the day of December 22nd in the hospital; that her physician advised her early on the morning of December 23rd that she could return to her home. (It will be noted that she was still in the

hospital as late as 10:45 a. m. when she slipped and fell.) The petition alleges that the table and tree cast shadows "3 to 5 feet." The petition shows that the plaintiff's bed was 10 feet away from the table and bed; that the patient, after dressing and finishing other details necessary to check out, walked 10 feet from her bed to the point where she slipped and fell. Since the petition alleges that the point where she slipped was 5 feet from the table, her bed was 10 feet from the table, and the shadows were cast from 3 to 5 feet, it does not affirmatively appear that she was within the shadows when she fell. Moreover, there is no allegation that she could not see the shadows. She took this walk for her own pleasure for, according to the allegations of the petition, she took the stroll "to chat" with another patient. The petition alleges that the asphalt tile on the floor gave it a very dull appearance. It will be noted that the petition did not allege that the plaintiff had no notice of the dull color of the tile. On the contrary having been there one full day and a short part of two other days—construing the petition more strongly against the pleader —this leaves no doubt in my mind that she had noticed or by the exercise of ordinary care could have noticed the color of the tile. In the absence of allegations to the contrary, the petition shows that the plaintiff was a perambulatory patient—therefore she had been walking on the same tile for the duration of her stay. The petition alleges that the hospital attendant mopped and buffed the floor at 10 o'clock a. m., only 45 minutes before the plaintiff slipped and fell, but the petition does not allege that the plaintiff did not know this. The petition alleges that the plaintiff was 60 years of age when she received her injury. With her experience and years, and in the absence of allegations to the contrary, I consider the petition to mean that she knew or should have known that polishing and buffing a floor might leave the floor slick, and therefore caution on her part was indicated. The petition shows on its face that the plaintiff drew the curtains around her bed herself, but at the same time alleges this as a reason for recovery. It is not alleged that the defendant knew that the plaintiff drew the curtains. The petition does not allege how or by whom the lights were extinguished or that the defendant knew or by the exercise of reasonable care should have known that the lights were not burning or that lights were needed. This

was knowledge which the plaintiff necessarily had, being in the room, and had she been exercising a greater degree of care for her own safety she could have turned on the lights if needed. As to the substance on the floor, which was alleged in the amended petition of the plaintiff, if the substance was not visible to the plaintiff, the defendant likewise had no way of being put on notice of the substance. Construing the petition the more strongly against the pleader, the language "it is impossible for the plaintiff to have discovered the presence of the said liquid on the area" because the shadows cast across the floor, the drawn bed curtains, and the lack of light, all combined to make it impossible for the plaintiff to discover the liquid, then it would likewise have been impossible for the defendant to have discovered the liquid on the floor. In my opinion the petition, by the allegations, and the failure to allege, as shown hereinabove, was subject to general demurrer. Counsel for the plaintiff cites and relies on *Bryant* v. *S. H. Kress & Co.*, 76 *Ga. App.* 530, in support of the plaintiff's contentions. In that case Chief Judge Sutton, speaking for the court, stated that a prima facie case was made for the plaintiff and that the trial judge erred in granting a nonsuit. In that case the evidence shows that the substance which was on the floor was visible. As I have heretofore stated, the petition in the instant case states that it was impossible to see the substance. There are other facts in the *Bryant* case which differentiate it from the case at bar, and that case is therefore not authority for a reversal of this case.

In *Haverty Furniture Co*. v. *Jewell*, 38 *Ga. App.* 395, it seems that the facts showed that the plaintiff had been in the store only a short period of time in order to pay a bill, and therefore had not had an opportunity to be familiar with the surroundings, as did the plaintiff in the case at bar. The plaintiff involved in the instant case had had a day and a short time on two other days to be familiar with the color of the floor, the lighting and other obstacles, and she had had 45 minutes in which to realize that the floor had been mopped and buffed, and in the exercise of ordinary care for her own safety she could have avoided injury to herself.

In *Caroway* v. *City of Atlanta*, 85 *Ga. App.* 792, which counsel for the plaintiff cites, the plaintiff was in the Atlanta Municipal

874

Airport and slipped at a spot where a thin coat of wax had been liberally applied and not properly distributed.

The decision in relation to the point before the court in the instant case was based upon the holding in *Bryant* v. *S. H. Kress & Co.*, supra, and *Haverty Furniture Co.* v. *Jewell*, supra, which I have discussed and distinguished hereinabove. Other cases are cited also as a basis for the decision there rendered, some of which I will discuss hereinafter. At any rate that case showed facts sufficiently different from the facts in the instant case so that it is not a basis for a reversal here.

Counsel cited *Saliba* v. *Saliba*, 202 *Ga.* 279, and *McWhorter* v. *Settle*, 202 *Ga.* 334 (43 S. E. 2d 247), in support of the contention that the pleading is not subject to special demurrer if the inference stated in the special demurrer may be legitimately drawn from special facts pleaded or exhibits attached to and made a part of the pleadings. The special demurrers there were not similar to nor did they cover the same points of law as the special demurrers in the instant case. In *Savannah Electric & Power Co.* v. *Russo*, 71 *Ga. App.* 397 (31 S. E. 2d 87), we find that the petition set forth a cause of action and could not be attacked by a general demurrer. Unlike the case at bar, the special demurrers were made by the plaintiff's amendment and the general conclusions attacked were supported by sufficient allegations. In the instant case, it is my opinion that the special demurrers urged originally and renewed after the petition was amended are meritorious.

Counsel for the defendant cites and relies on *Ford* v. *S. A. Lynch Corp.*, 79 *Ga. App.* 481 (1) (54 S. E. 2d 320), wherein it is stated: "From the allegations of the petition in this case it appears that the plaintiff's injuries were the result of his own failure to exercise ordinary care in walking upon the marble floor of the hotel lobby while it was covered with soapy water, at the time and place in question; and in such circumstances the question of negligence is properly decided by the court as a matter of law. Accordingly, the trial judge did not err in sustaining the general demurrer to the petition and in dismissing the action." In that case it was alleged that the soapy water on the marble floor of the hotel lobby was transparent and translucent and that it was not visible. The court in the body of the opinion stated that

soapy water which is transparent and translucent is not necessarily invisible notwithstanding the allegations of the petition. The court also went on to say that the plaintiff was familiar with the lobby floor and that the plaintiff's injuries were the result of his own failure to exercise ordinary care in walking on the marble floor while it was covered with soapy water. The court stated that, under such circumstances, the question of negligence is properly decided by the court as a matter of law, and that the trial judge did not err in sustaining the general demurrer to the petition. The court in that case cited *Lebby* v. *Atlanta Realty Corp.*, 25 *Ga. App.* 369 (103 S. E. 433); *Ogain* v. *Imperial Cafe*, 25 *Ga. App.* 415 (103 S. E. 594); *Hendricks* v. *Jones*, 28 *Ga. App.* 335 (111 S. E. 81); *Avary* v. *Anderson*, 31 *Ga. App.* 402 (120 S. E. 683); *National Bellas-Hess Co.* v. *Patrick*, 49 *Ga. App.* 280 (175 S. E. 255); *Lane Drug Stores* v. *Story*, 72 *Ga. App.* 886 (35 S. E. 2d 472); *Holman* v. *American Automobile Ins. Co.*, 201 *Ga.* 454, and *Banks* v. *Housing Authority of the City of Atlanta*, 79 *Ga. App.* 313 (53 S. E. 2d 595). In *Emory University* v. *Shadburn*, 47 *Ga. App.* 643, affirmed 180 *Ga.* 595, it was stated: "A private hospital in which patients are placed for treatment by their physicians, and which undertakes to care for the patients and supervise and look after them, is under the duty to exercise such reasonable care in looking after and protecting a patient as the patient's condition, which is known to the hospital through its agents and servants charged with the duty of looking after and supervising the patient, may require." In that case it will be noted that the patient was delirious, and this condition was known to the hospital, and that the hospital authorities in charge of the patient and having knowledge of these facts should have anticipated that the patient might endeavor to leave the hospital by some means as by jumping out of the window. This case went to trial before a jury and the jury resolved the case in favor of the plaintiff. This court upheld the verdict and judgment of the trial court on the basis that the defendant was negligent in not caring for the delirious, nervous, and clearly insane patient. Clearly that case is inapplicable to the case at bar because there is no pleading in the instant case that the plaintiff was incapacitated in any manner.

I will now consider *Banks* v. *Housing Authority of the City of*

*Atlanta,* supra, which was relied upon in *Ford* v. *S. A. Lynch Corp.,* supra. In the *Banks* case the court stated that the conditions which caused the plaintiff to be injured had existed for two days prior to the occurrence, and therefore that the condition was or should have been obvious to the plaintiff and that her fall and injuries were the result of her own failure to exercise ordinary care under the circumstances.

In *Bessman* v. *Greyhound Bus Depot,* 81 *Ga. App.* 428 (58 S. E. 2d 922), the plaintiff fell while using a wet and muddy approach to the entrance of defendant's bus depot. The court held that she should have observed the wet and muddy conditions of said approach and that by walking thereon she was the author of her own mishap. The Court of Appeals ruled that the trial judge properly sustained the general demurrer to the amended petition and in dismissing the case.

In *Lebby* v. *Atlanta Realty Corp.,* supra, headnote 1, this court said: "No cause of action was stated by the allegations as to the injury to the plaintiff from slipping and falling on the floor of a hallway, upon which he was walking when going from the office of a tenant in the defendant's office building, and which, while he was in the tenant's office, was covered with water preparatory to mopping it, and thus was rendered slick and dangerous to walk upon; it not appearing that there was any culpable negligence on the part of the defendant, or that the alleged danger was not obvious and could not by the exercise of ordinary care have been discovered by the plaintiff."

This court held in *Biederman* v. *Montezuma Mfg. Co.,* 29 *Ga. App.* 589 (116 S. E. 225): "There being no allegation to the contrary, it must be assumed that the servant (the plaintiff) was of ordinary intelligence, and that he was laboring under no physical defect or disability which rendered him incapable of appreciating the situation and knowing of the dangers incident to his employment. *Thomas* v. *Georgia Granite Co.,* 140 *Ga.* 459, 461 (79 S. E. 130). Construing the petition (as it must be construed) most strongly against the plaintiff, it appears that the defects upon the floor which caused him to slip and fall, and thus resulted in the injuries for which he sues, were patent and obvious, and that he had equal means with the defendant, his master, of knowing thereof. No cause of action is alleged, and the

general demurrer of the defendant was therefore properly sustained. Civil Code (1910), § 3131; *Dozier* v. *Atlanta*, 118 *Ga.* 354 (45 S. E. 306); *Ludd* v. *Wilkins*, 118 *Ga.* 525 (45 S. E. 429); *Day* v. *Graybill*, 24 *Ga. App.* 524 (101 S. E. 759); *Ogain* v. *Imperial Cafe*, 25 *Ga. App.* 415 (103 S. E. 594)."

In *Holloman* v. *Henry Grady Hotel Co.*, 42 *Ga. App.* 347, 348 (156 S. E. 275), in a case involving a slick, smooth surface of marble stairway of the defendant's hotel, the court held: "We are of the opinion that this court may take judicial notice of the fact that marble is a proper material from which to construct a stairway. It has the sanction of centuries of use for that and other architectural purposes. There is nothing in its texture that renders it inherently slick and, therefore, unsafe and dangerous; and there is no suggestion in the petition in this case that any foreign substance was deposited upon the steps to render them slick and dangerous. It is true that marble is a stone that admits of polish, but, even when polished, it is not naturally slick and dangerous, as we have indicated."

In *Holman* v. *American Automobile Ins. Co.*, supra, (p. 460) the court said: "In *Avary* v. *Anderson*, 31 *Ga. App.* 402 (120 S. E. 683), Judge Bell, now Chief Justice of this court, speaking for the Court of Appeals, said: 'Whether the plaintiff was a tenant, boarder, or guest of the defendant innkeeper, when her petition is construed most strongly against her (as it must be, on demurrer), it appears that the grease upon the floor of the bathroom, which caused her to slip, fall and suffer the injuries sued for, was patent and obvious, and that, even though the defendant, in allowing such condition to exist in the bathroom furnished for the plaintiff's use, was negligent as alleged, the plaintiff could have avoided the consequences thereof by the exercise of ordinary care; and this is so notwithstanding the general averment of proper care on her part, and the further allegation that she did not know of the existence of the greasy substance at the particular place where she fell, and that she did not see and had no means of seeing or knowing that it was there; these averments being negatived by the particular facts pleaded. It affirmatively appears that the plaintiff could see; but if this were not so, she would be presumed, in the absence of anything to the contrary, to be free from disability in this regard.' In the

*Avary* case, the court held that a general demurrer was properly sustained. In *Crown Cotton Mills* v. *McNally,* 123 *Ga.* 35 (51 S. E. 13), the court said: 'If the danger is obvious, and as easily known to the servant as to the master, the latter will not be liable for failing to warn him of it.' In *Lebby* v. *Atlanta Realty Corp.,* 25 *Ga. App.* 369 (103 S. E. 433), where it was held that a general demurrer was properly sustained, it was said: 'No cause of action was stated by the allegations as to the injury to the plaintiff from slipping and falling on the floor of a hallway, upon which he was walking when going from the office of a tenant in the defendant's office building and which, while he was in the tenant's office, was covered with water preparatory to mopping it, and thus was rendered slick and dangerous to walk upon; it not appearing that there was any culpable negligence on the part of the defendant, or that the alleged danger was not obvious and could not by the exercise of ordinary care have been discovered by the plaintiff.' In *McDonnell* v. *Central Ry. Co.,* 118 *Ga.* 86 (44 S. E. 840), this court held: 'If the servant had equal means with the master of discovering the danger, any injury resulting to him would be the result of his own fault.' And also in *Stewart* v. *Seaboard Air-Line Ry. Co.,* 115 *Ga.* 624, 628 (41 S. E. 981), this court held: 'If both the plaintiff and the defendant had equal opportunities of discovering this patent defect in the appliance on the day the accident occurred, then the defendant would not be liable for an injury resulting therefrom.' In *Dunbar* v. *Hines,* 152 *Ga.* 865, 871 (111 S. E. 396), in holding that the allegations contained in a count were insufficient to state a cause of action for actionable negligence, and that a general demurrer should have been sustained, it was said: 'In suits for injuries arising from the negligence of the master, when the dereliction of duty consists in the failure to provide a safe place to work, or a failure to warn the servant of an unknown danger, the servant must not only make it appear that the master failed to perform his duty to furnish him a safe place to work, or to warn him of an unknown danger, but also that the servant injured did not know and had not equal means of knowing of the defective condition of the instrumentality employed or of the danger, and by the exercise of ordinary care could not have known thereof; and it is necessary to allege these facts in the complaint.' Applying these principles,

which have been many times announced by this court and the Court of Appeals, to the allegations of the instant petition, can it be said as a matter of law that they are sufficient to state a cause of action for actionable negligence? We are not inclined to think so. The injured party was a mature person, 54 years of age, employed under civil service requirements as a civilian junior clerk typist by the United States Government. Presumably she had good vision, there being no allegation to the contrary. The accident occurred during her lunch hour at the post exchange cafeteria, a place provided by her employer, at which she was invited to eat. There is no allegation that she was not familiar with the floor of the cafeteria and how it was ordinarily kept, and no contention as to insufficient lights. 'An excessive and unnecessary amount of wax on the floor which should have been wiped up and removed' must have been patent and obvious; and there is no allegation that it was not. It is not shown the floor remained the same color after being waxed; and there is no allegation that by the exercise of ordinary care she would have been unable to discover that the floor was dangerous. Her opportunity to see and know the condition of the floor was certainly equal to that of her employer; and there is no allegation that she even so much as looked at the floor and was unable to detect that it was slick from being waxed. Such specific facts must necessarily prevail over the mere conclusion of the pleader that she was injured 'without any negligence on her part'. *Hendricks* v. *Jones*, 28 *Ga. App.* 335 (111 S. E. 81) ; *Lebby* v. *Atlanta Realty Corp.*, supra; *Banks* v. *Schofield's Sons Co.*, 126 *Ga.* 667 (55 S. E. 939). The allegations of the petition being insufficient to state a cause of action for actionable negligence upon the part of the petitioner's employer, the general demurrer was properly sustained for this reason."

Counsel has been diligent in a comparative analysis of the facts in that case as compared to the facts in the instant case. The facts are almost on all fours. So that the bench and bar may benefit by this comparative analysis, I hereinbelow show counsel's interpretation of the facts in the *Holman* case followed immediately in each instance by the facts in the instant case, shown in italics. I have checked the facts and find that counsel has accurately stated them and I therefore quote from counsel's brief:

Injured party a mature person 54 years of age. *Injured party a mature person 60 years of age.*

Presumably she had good vision, no allegation to the contrary. *Presumably she had good vision. No allegation to the contrary.*

No allegation she was not familiar with the building and how it was usually maintained. *No allegation she was not familiar with the building and how it was usually maintained.*

An excessive amount of wax on the floor must have been patent and obvious. No allegation that it was not. *No excessive amount of wax alleged, but the waxed condition of the floor must have been patent and obvious. No allegation that it was not.*

No allegation she would have been unable to discover the dangerous condition of the floor by exercising ordinary care. No allegation that she even so much as looked at the floor and was unable to detect that it was slick from being waxed. *No allegation she would have been unable to discover the condition of the floor by the exercise of ordinary care, but on the contrary the amended petition alleged that "it was impossible for the plaintiff to have discovered the presence of said liquid on said area. . ."*

The allegations of the petition were insufficient to state a cause of action for actionable negligence and the general demurrer was properly sustained. *The allegations of the instant case fail to state a cause of action for actionable negligence and the defendant contends the general demurrer was properly sustained.*

In *Hill* v. *Davison-Paxon Co.*, 80 *Ga. App.* 840, 841 (57 S. E. 2d 680), Judge Townsend, speaking for the court, said: "As between landlord and tenant, master and servant, and owner and customer, one who sustains injuries upon the property of the other, in order to recover, must show that two elements at least exist, viz., fault on the part of the owner, and ignorance of danger on the part of the invitee. See 58 A. L. R. 136 (Ann.); *Holman v. American Automobile Ins. Co.*, 201 *Ga.* 454 (39 S. E. 2d 850)."

In *Wilkinson* v. *Rich's, Inc.*, 77 *Ga. App.* 239, 244 (48 S. E. 2d 552), in a personal-injury case regarding a throw rug slipping, this court said: "It is a matter of common knowledge that such rugs have a tendency to slip and we think the plaintiff was bound to know of such qualities of such rugs." In the instant case, there is no allegation to show that the plaintiff did not have full knowl-

edge of the waxed and polished condition of the floor. Obviously the shiny surface of a waxed floor should indicate that it could be slick. Walking on a polished floor is a danger that is common knowledge to all people and the plaintiff in the instant case was peculiarly in a position to recognize such danger. See also *Ogain* v. *Imperial Cafe,* 25 *Ga. App.* 415, 416 (103 S. E. 594); *McMullan* v. *Kroger Co.,* 84 *Ga. App.* 195 (65 S. E. 2d 420), and *Moore* v. *Kroger Co.,* 87 *Ga. App.* 581 (74 S. E. 2d 481).

In *Mattox* v. *Atlanta Enterprises,* 91 *Ga. App.* 847, Judge Quillian, speaking for the court, said: "Mrs. Cleo Mattox brought an action for damages against Atlanta Enterprises, Inc., in Fulton Superior Court. The suit was based upon alleged negligence of Atlanta Enterprises Inc., resulting in certain personal injuries to the plaintiff. The defendant filed a general demurrer to the petition on the ground that the petition did not set forth a cause of action. The demurrer was sustained, the petition was dismissed and the plaintiff excepted.

"The petition alleged in substance that the defendant corporation was engaged in the amusement business, and on July 23, 1950, operated a motion-picture theatre in the City of Atlanta' known as the Roxy Theatre; and that the defendant's theatre was operated for a profit and charged the public for admission. The petition further alleged: That the plaintiff resided in Griffin, Georgia, and was employed as Registrar of Spalding High School at Griffin; that the plaintiff brought three high-school children to Atlanta for the purpose of the children attending a motion picture performance at the Roxy Theatre; that the plaintiff had custody of the children on the trip to Atlanta; that the plaintiff purchased tickets for the students to attend the Roxy Theatre; that, although the plaintiff did not attend the performance, she arranged to return for the children; that at about 11:15 p. m. the plaintiff returned for the children and informed an usher of her mission, and he invited her to enter for the purpose of looking for the children; that, being unable to locate the children, the plaintiff returned to the usher, who informed her that they were in the ladies' rest room; that the usher directed her to go down a stairway and then turn left as she entered the lobby, and to follow another stairway down into the rest room; that the theatre was capable of being lighted, but there were no ceiling

lights on, and the only lights burning were two dim wall lights in the main lobby, which had shades over them; that the stairway was not lighted, even though there was a wall light on the stairway which could have been in use, but was not; that the plaintiff approached the entrance to the stairway; that the stairway was dark, and the plaintiff cautiously stepped forward down the stairs feeling her way as she advanced to the ladies' rest room; that the carpet on the stairway protruded up at the head of the stairway immediately above the first step, a distance of one and one-half inches, and there was a hole in it at that place; that the carpet on the first step also had a torn place twenty inches long; that there was a torn place in the carpet on the second step twenty-four inches long; that the defendant had knowledge of these facts because the assistant manager had been reporting the condition to the manager since 1949; that there was a large amount of grease or some other slimy, slick, and slippery substance on the carpet; that it was impossible for the plaintiff to see this substance because of the darkness; that, when the plaintiff made a step forward to go down the steps, the heel of her shoe caught in the carpet and her other foot came in contact with a greasy spot, which caused the plaintiff to lose her balance and fall down the entire stairway and receive permanent and painful injuries; that the plaintiff was in the theatre at the invitation of the owner and was on the premises for the benefit of the defendant; that it was necessary for the defendant to invite parents of children or other persons who had the custody of children to enter the theatre, because the parents would not allow the children to attend unless they were allowed to enter for the purpose of accompanying children from the theatre.

"The petition alleged also: That the defendant had notice of the defects in the stairway; and that the defendant was negligent in allowing the greasy substance to remain on the stairway, in failing to warn the plaintiff of the presence of the grease, in keeping the theatre in a state of darkness, in allowing the protruding, torn, and defective carpet to remain on the stairway, creating a hidden peril which caused the plaintiff to fall.

"The averments of the petition, properly construed most strongly against the pleader, show that the plaintiff was aware that the stairway was 'dark', and that she could not safely de-

scend it; that, nevertheless, she continued down the steps 'feeling her way as she advanced', fell, and sustained certain personal injuries. Under the rulings of *Hendricks* v. *Jones*, 28 *Ga. App.* 335 (111 S. E. 81); *Flournoy* v. *American Hat Mfg. Co.*, 21 *Ga. App.* 599 (94 S. E. 835); *Lebby* v. *Atlanta Realty Corp.*, 25 *Ga. App.* 369 (103 S. E. 433); *Avary* v. *Anderson*, 31 *Ga. App.* 402, 404 (120 S. E. 683); *Frierson* v. *Mutual Realty Co.*, 48 *Ga. App.* 839 (174 S. E. 144), we are constrained to hold that the danger was obvious to her, and by the exercise of ordinary care for her own safety, she could have avoided being injured. Therefore, she was precluded from recovery because of her own negligence. Although this writer does not agree that the correct rule is stated in the decisions cited, and while other jurisdictions hold that it is a jury question as to whether or not it is negligence to walk down a strange dark stairway, we are bound to follow the precedents of this court." It will be noted that the facts in that case are peculiarly on all-fours with the facts in the instant case. Also the language and reasoning in that case are apt and appropriate as applied to the instant case.

The only reasonable inference from the allegations of the petition is that the alleged defects were such as could have been seen by the plaintiff in the exercise of ordinary care for her own safety, and that the alleged injury was the result of the failure on the part of the plaintiff to exercise such degree of care for her own safety. In my opinion and according to my viewpoint it is not necessary for me to pass on any assignment of error except as to the judgment of the trial court in overruling the general demurrers. But since the majority opinion reverses the judgment of the trial court on both the general and special demurrers, I think it proper to state that the judgment of the majority opinion of this court reversing the judgment of the trial court on the special demurrers as well as the general demurrers is erroneous. I hold as to the special demurrers that the trial court likewise did not err in its judgment overruling the special demurrers.